UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JULIE SCHMIDT,

      Plaintiff,

 -vs-                                        Case No. 1:24-cv-_____

KALAMAZOO PUBLIC SCHOOLS and
KALAMAZOO PUBLIC SCHOOLS BOARD
OF EDUCATION,

      Defendants.
_____

Erin Hopper Donahue (P74336)
Lauren Anne Nicholson (P87027)
WHITE SCHNEIDER PC
Attorneys for Plaintiff
1223 Turner Street, Suite 200
Lansing, MI  48906
(517) 349-7744
edonahue@whiteschneider.com
lnicholson@whiteschneider.com
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Julie Schmidt, by and through her attorneys, White Schneider PC, and for her Complaint against Defendants Kalamazoo Public Schools and Kalamazoo Public Schools Board of Education, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Julie Schmidt (hereinafter "Ms. Schmidt") is an individual residing in Kalamazoo, Michigan, Kalamazoo County.  She was employed by Defendant Kalamazoo Public Schools for approximately 25 years as a teacher.

2. Defendant Kalamazoo Public Schools ("District") is a school district authorized and established pursuant to the Revised School Code, Mich. Comp. Laws §380.1, *et seq.*

3. Defendant Kalamazoo Public Schools Board of Education ("Board") is the duly selected and qualified public body authorized by the Revised School Code, Mich. Comp. Laws §380.1, *et seq*, to operate and conduct business on behalf of the District.

4. Defendants have their place of business and exercise their authority in Kalamazoo County, Michigan.

5. This action arises out of Title I of the Americans with Disabilities Act of 1990 ("ADA"), as codified, 42 U.S.C. §§12112-12117.

6. Jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(4), and 1367; 42 U.S.C. §2000e-5(f), and a right-to-sue letter issued by the Equal Employment Opportunity Commission ("EEOC").  (Exhibit 1.)

7. Compensatory and punitive damages are sought pursuant to 42 U.S.C. §1981a.

8. Costs and attorney fees are requested pursuant to 42 U.S.C. §2000e-5(k) and Fed. R. Civ. P. 54.

9. This action properly lies in the Western District of Michigan, Southern Division, pursuant to 28 U.S.C. §1391(b), because the claim arose in this judicial district as all parties are residents of this judicial district, and because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

**FACTS**

10. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

11. Ms. Schmidt is a 67-year-old woman.

12. Ms. Schmidt was hired by the Board in 1994 as a pre-kindergarten teacher at Winchell Elementary School. The 2021-2022 school year was Ms. Schmidt's 25th year of public school teaching.

13. Ms. Schmidt is currently certified and qualified to teach Elementary K-5.

14. Ms. Schmidt's position was part of a bargaining unit represented by the Kalamazoo Education Association, MEA/NEA ("Association").

15. The Association is a labor organization and is the exclusive and sole bargaining representative "for all certified professional personnel under contract employed full-time or on a regular basis part time in the grades Pre K-12. . . ." The Association and Defendant Board were, at all relevant times, parties to a collective bargaining agreement ("CBA") for the time period covering August 17, 2021 through August 16, 2023.

16. Ms. Schmidt is a member of the Association and therefore a third-party beneficiary of the CBA.

17. As a result of Ms. Schmidt's autoimmune disease, rheumatoid arthritis, and the immunosuppressant medication she takes to treat it, she has an increased risk of infections such as COVID-19.  Ms. Schmidt also has a higher risk of suffering severe complications from infections.

18. In response to the COVID-19 pandemic, all of Defendants' employees worked fully remotely for the 2020-2021 school year.

19. On or about May 25, 2021, Ms. Schmidt sent an ADA reasonable accommodation request form to Defendant District through email to Dan Emmons, the Human Resources Compliance Specialist. To avoid transmission of COVID-19 due to her immunocompromised status, Ms. Schmidt requested continued assignment to fully remote virtual instruction for the 2021-2022 school year.

20. On or about May 25, 2021, Mr. Emmons replied to Ms. Schmidt's email, stating that he would request medical records from Ms. Schmidt's rheumatologist.

21. On or about June 14, 2021, Mr. Emmons emailed Ms. Schmidt stating that he was "working through the volume of records" sent to him by Ms. Schmidt's rheumatologist. Mr. Emmons further stated that he was "going to hold off on processing the ADA claim," because he ran into Steve Leland, Defendant District's Human Resources Personnel Officer, who told Mr. Emmons that Ms. Schmidt was listed as participating in virtual teaching for the 2021-2022 school year. Mr. Emmons stated, "I am going to hold off further processing this claim. If anything changes, we will reopen it for a determination."

22. On August 9, 2021, Ms. Schmidt received her placement letter for the 2021-2022 school year from Defendant District, which placed her as a fully virtual elementary teacher, this time through the Kalamazoo Virtual Learning Program ("KVLP"). This position would require Ms. Schmidt to teach virtually from a classroom shared with another virtual teacher and would require no contact with students.

23. On or about August 23, 2021, the KVLP had its first staff meeting of the 2021-2022 school year in person at Oakwood Elementary School. At this staff meeting, KVLP teachers were informed they would be required to report to the building to conduct their virtual classes. KVLP Principal Kim Kirshman also informed teachers at this meeting that there may be more flexibility for remote work after the first six weeks of the school year.

24. Following the KVLP staff meeting on or about August 23, 2021, Ms. Schmidt was aware that the position was not remote as she had requested under the ADA.

25. On or about September 13, 2021, another KVLP staff meeting was held in which teachers were notified that Northwest Evaluation Association ("NWEA") standardized testing would be happening in person at Oakwood and KVLP staff would need to assist with proctoring.

26. On or about September 19, 2021, Ms. Schmidt emailed Mr. Emmons asking that someone else proctor the face-to-face NWEA testing for her.

27. On or about September 20, 2021, Mr. Emmons responded to Ms. Schmidt stating that she would be exempt from NWEA testing and that Ms. Kirshman would assign other teachers to proctor Ms. Schmidt's class.

28. On or about September 20, 2021, Ms. Schmidt emailed Mr. Emmons asking if she could teach virtually from home while students were testing in the building.

29. On September 20, 2021, Mr. Emmons responded to Ms. Schmidt stating, "I personally have no problem with that but you really need to discuss that with

5

Ms. Kirshman."

30. Ms. Schmidt's request to work remotely and not be in the building while students are testing was subsequently denied by Ms. Kirshman.

31. On or about September 27, 2021, a KVLP staff meeting was held in which Ms. Kirshman suggested hosting a study hall or pop-in hours for students at the building.

32. On or about November 1, 2021, a professional development session was held for KVLP staff in which the idea of tutoring K-5 students in person was discussed.

33. On or about November 1, 2021, Ms. Schmidt sent an email to Mr. Leland letting him know that Ms. Kirshman requested access to her medical records and ADA accommodation request. Ms. Schmidt also again requested to work remotely as more students began to come to the building on a daily basis.

34. On or about November 1, 2021, Mr. Emmons responded to Ms. Schmidt's email to Mr. Leland, and stated that being in the classroom was an essential function of her job and that she was denied the accommodation of teaching remotely. Further, Mr. Emmons stated, "If you feel there is no possible way that you can continue your position, we can offer an FMLA leave of 12 weeks or an unpaid leave of absence for the rest of this school year."

35. On or about November 2, 2021, Ms. Schmidt responded to Mr. Emmons seeking clarification. She asked whether "[a] classroom setting is an essential function of [her] position for virtual teaching." Additionally, Ms. Schmidt asked for leeway to teach from home for even part of the week.

6

36. On or about November 2, 2021, Mr. Emmons responded to Ms. Schmidt and asked her what the purpose of working from home part of the week would be. He did not answer her question.

37. On or about November 2, 2021, Ms. Schmidt responded to Mr. Emmons, stating that when students were scheduled to be in the building, teaching from home would reduce the risk of her contracting COVID-19.

38. On or about November 2, 2021, Mr. Emmons denied Ms. Schmidt's request to work from home part of the week.

39. On or about November 2, 2021, Mr. Emmons forwarded an email from another KVLP elementary teacher to Ms. Kirshman, asking Ms. Kirshman how much contact there is between students and KVLP elementary teachers.

40. In response to Mr. Emmons, on or about November 3, 2021, Ms. Kirshman named two other KVLP elementary school teachers who had requested accommodations in addition to Ms. Schmidt, stating that the students in the building are masked and do not go near the teachers' classrooms.

41. Further, in her November 2, 2021 email to Mr. Emmons, Ms. Kirshman stated:

> Frankly, the lower elementary teachers seem to have banded together in an effort not to work with kids at all. We do have kids that come in to get help – the elementary teachers don't want to do that which is why you're getting the request. Our littlest kids can't get help due to these requests. What IS the limitation? Were they told they never had to work with children in person? Were they told they should not have to work with staff in person? Where are the boundaries? I'm ready to let all the secondary teachers take over the elementary jobs so that we can actually help some of these kids. Please let me know. What are the accommodations that have been promised?

7

42. On November 3, 2021, Ms. Kirshman emailed Mr. Emmons stating, "Maybe it's time for Schmidt … to take FMLA. I don't have the budget to hire tutors for teachers who 'can't' work with children."

43. On or about November 6, 2021, Ms. Schmidt emailed Mr. Emmons asking if she could attend staff professional development and meetings virtually from her classroom, as her doctor had recommended that she socially distance.

44. On or about November 7, 2021, Mr. Emmons responded to Ms. Schmidt stating, "I don't have a problem with that but you need to run it by Kim [Kirshman]."

45. On November 7, 2021, Ms. Schmidt emailed Ms. Kirshman asking to attend staff professional development and meetings virtually from her classroom.

46. On November 7, 2021, Ms. Kirshman forwarded Ms. Schmidt's email to Mr. Emmons and Mr. Leland, stating, "This is a team building … meeting because of the lack of relationship the elementary teachers have with others in the building.  Maybe I can put her behind a glass partition?  May I require her to be there? . . ."

47. On November 8, 2021, Mr. Emmons responded to Ms. Kirshman stating, "As long as you get correct social distances for her I don't see the harm."

48. On November 8, 2021, Ms. Kirshman responded to Mr. Emmons asking, "3 ft or 6 ft?" Shortly thereafter, Mr. Emmons responded "6".

49. On November 23, 2021, it was announced in the newsletter for KVLP staff, Virtual Program Running Updates (VPRU), that a substitute for another teacher in the program would be working remotely. Further, another staff member

agreed to substitute his own position remotely, meaning from home if he chose, until his position was otherwise filled.

50. On or about February 2, 2022, Ms. Schmidt emailed Mr. Emmons and Mr. Leland asking, "If there are not enough students requesting virtual next year, would I still be guaranteed a position teaching virtually with my ADA request at Oakwood. My principal has expressed interest in keeping me at Oakwood teaching virtually. Thanks for any information you can lend before the required March 1st retirement announcement date. . . ."

51. By February 16, 2022, neither Mr. Emmons nor Mr. Leland had responded to Ms. Schmidt's inquiry, so she forwarded her original February 2nd message to Mr. Emmons.

52. On February 18, 2022, Mr. Emmons responded to Ms. Schmidt, stating, "There is no way at this point that I could 'guarantee' you a virtual teaching position. At this point I am not even sure there will be any virtual teaching done next school year."

53. On April 5, 2022, Association Uniserv Director Christine Anderson emailed Ms. Kirshman, stating it had been brought to the Association's attention that teachers with ADA accommodations, including no student contact and virtual-only teachers, were advised that they may be directed to teach in person during M-STEP testing if needed. M-STEP is the state standardized testing used to assess students' progress towards Michigan's educational standards. Ms. Anderson further advised Ms. Kirshman in her email that requiring these teachers to teach in person during testing would violate their accommodation plans under the ADA and jeopardize their health.

9

54. On April 5, 2022, in response to Ms. Anderson's email, Ms. Kirshman merely replied, "They won't be. Thanks for your email. : )"

55. On April 5, 2022, Ms. Kirshman forwarded her response to Ms. Anderson's original April 5, 2022 email to Steve Leland asking, "Is it possible that we will not have these types of ADA accommodations for teachers next year? I'm not sure even I can do anything with a teacher who cannot help in any way with live children."

56. Ms. Kirshman's April 5, 2022 response forwarded to Mr. Leland was then accidentally forwarded by Ms. Kirshman to Ms. Schmidt and another teacher with accommodations, stating, "FYI".

57. In a subsequent email on April 5, 2022 to Ms. Schmidt and the other teacher, Ms. Kirshman explained that her comment to Mr. Leland was accidentally relayed to the teachers, stating, "My email to Mr. Leland was not specific to your situations, but as a general concern as we try to build a new program. It takes important players 'off the field' so to speak, which is difficult when managing the supports we need in the building."

58. On April 16, 2022, Ms. Schmidt emailed Mr. Emmons and Mr. Leland stating that she had tested positive for COVID-19 and would be taking sick days. Ms. Schmidt also stated that, per guidelines from the Centers for Disease Control, she would return to work after five days of isolation if she was asymptomatic, and asked whether she was correctly following school procedures. Further, Ms. Schmidt again requested to work from home due to her immunocompromised status, and asked whether that would be an option for the remainder of the 2021-2022 school year.

10

59. On April 18, 2022, Mr. Emmons responded to Ms. Schmidt stating, "Please email me a copy of your positive test. Thanks."

60. On April 18, 2022, Ms. Schmidt responded to Mr. Emmons with a copy of her positive COVID-19 test.

61. On April 18, 2022, Ms. Kirshman emailed Ms. Schmidt stating, "… I have allowed a teacher to work remotely from home when they have covid (for the 5 day period), with the results of the test from the physician's office. I am open to allowing you to work remotely with the same provision. I was unclear whether you were going to work this week. You should plan to return to the building following the isolation period, unless symptomatic. I believe that you would need a Dr.'s note if you are out beyond the 5 days, but Mr. Emmons and Mr. Leland can confirm that."

62. On April 21, 2022, Ms. Kirshman emailed Ms. Schmidt stating that she had not heard back from Ms. Schmidt regarding whether she was working remotely or taking sick days while she was out with COVID-19. Ms. Kirshman also asked if Ms. Schmidt had messaged her students' families that she would be out, or if she had been holding class sessions.

63. On April 21, 2022, Ms. Schmidt responded to Ms. Kirshman stating that she had put five sick days in on their absence platform. Ms. Schmidt also stated that students' families had been notified by email, text, and Google classroom announcements regarding her absence and availability. Ms. Schmidt stated that she would grade assignments, take attendance, and communicate with students in need of assistance but that she was unable to hold virtual class sessions at that time. She also

11

stated that upon her return, her doctor would fax or email a note excusing her to Mr. Leland.

64. On April 22, 2022, Ms. Schmidt again emailed Mr. Emmons and Mr. Leland asking if she could teach remotely for the remainder of the 2021-2022 school year.

65. On April 25, 2022, Ms. Schmidt emailed Ms. Kirshman, Mr. Emmons, and Mr. Leland stating that she had lingering physical effects from COVID-19, including fatigue and a secondary ear infection. Ms. Schmidt asked if she could work remotely until her fatigue lifted.

66. On April 25, 2022, Ms. Kirshman responded to Ms. Schmidt, stating "… I know fatigue can last for an an [sic] indefinite amount of time, so I cannot approve your request. If you are unable to come in due to an ear infection, please enter a sick day and communicate with your families."

67. On April 25, 2022, Mr. Emmons responded to Ms. Schmidt stating, "As you have indicated you have two medical conditions that prevent your attendance, this would be processed under the FMLA. I have attached paperwork for you and your doctor to complete. . . ."

68. On April 25, 2022, Ms. Schmidt responded to Mr. Emmons stating, "My plan is to use sick days when I am especially fatigued. I am retiring at the end of the year so I do not need the benefits of FMLA. What do you think of my plan?"

69. On April 25, 2022, Mr. Leland emailed Mr. Emmons stating, "… As far as I'm concerned she needs to take sick days, and not have remote days."

12

70. On April 25, 2022, Mr. Emmons responded to Ms. Schmidt stating, "You are correct in using sick days, but that is also what happens under the FMLA also. So we need the medical Certification to back up your request, and I will enter you as taking an intermittent leave."

71. On April 25, 2022, Ms. Schmidt filled out her portions of the necessary forms to request a leave of absence under FMLA from April 29, 2022 through May 19, 2022, citing fatigue and other lingering physical effects from COVID-19.

72. On April 26, 2022, Ms. Schmidt emailed Mr. Emmons stating, "My doctor will not sign FMLA paperwork at this time. My plan is to take sick days when I do not feel well."

73. From April 29, 2022 through May 19, 2022, Ms. Schmidt took an intermittent medical leave, using 13 sick days and one personal business day.

74. It took Ms. Schmidt 11 weeks to recover from long COVID-19, and still suffers from lingering symptoms of weakness, fatigue, and high heart rate.

75. Ms. Schmidt retired in June 2022, after finishing her end of school year duties at Oakwood for fear that her health would suffer further if she was again exposed to COVID-19 in the school setting.

76. At no point during the relevant time period did Defendants work collaboratively with Ms. Schmidt to reach resolutions of her ADA requests.

77. On October 19, 2022, Ms. Schmidt filed a charge of discrimination with the EEOC and the Michigan Department of Civil Rights ("MDCR").

78. On November 29, 2023, Ms. Schmidt was issued a right-to-sue letter by the EEOC and MDCR. (Exhibit 1.)

13

## COUNT I – VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT: DISCRIMINATORY TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

79. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

80. Title I of the ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms or privileges of employment." 42 U.S.C. §12112(a).

81. Ms. Schmidt is a qualified individual with a disability.

82. Defendants violated the prohibition in Title I by:

   (a) failing to process and/or accommodate Ms. Schmidt's requests for reasonable accommodation;

   (b) failing to engage in a meaningful dialogue about why reasonable accommodations were being denied; and

   (c) constructively discharging Ms. Schmidt by requiring her to take sick days and/or medical leave rather than processing her requests for reasonable accommodation.

83. Defendants' conduct adversely affected Ms. Schmidt's opportunities and status because she was deprived of equal access to compensation and benefits.

84. Because Defendants acted with malice or reckless indifference toward Ms. Schmidt's rights under the ADA, they are also liable for punitive damages. Finally, Defendants are liable for court costs, reasonable attorney fees, and expenses Plaintiff has incurred, and will continue to incur, in the prosecution of this matter.

**COUNT II – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT:
<u>FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS</u>**

85. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

86. Title I of the ADA makes it unlawful for an employer to fail to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity." 42. U.S.C. §12112(b)(5)(A).

87. Ms. Schmidt is a person with a disability within the meaning of the ADA as an individual with a physical impairment that substantially limits one or more of her major life activities; or as a person with record of such impairment; or as a person who is regarded as having such an impairment. 42 U.S.C. §12102(A)-(C).

88. Ms. Schmidt has been diagnosed with rheumatoid arthritis. The complications associated with this diagnosis such as extreme fatigue, stiffness, and joint pain substantially limit her major life activities by making it difficult for Ms. Schmidt to bend over, get in and out of cars, reach overhead, fall asleep and stay asleep, get in and out of bed, walk outdoors on flat ground, and lift a full glass or cup to her mouth. Further, Ms. Schmidt takes immunosuppressant medication to help treat her rheumatoid arthritis, which makes her more susceptible to contracting infections such as COVID-19 and more susceptible to suffering more severe complications from infections.

89. Ms. Schmidt is otherwise qualified for the virtual teaching position, with or without accommodation, as she is able to perform the essential functions of the position.

90. Defendants were fully aware of Ms. Schmidt's disabilities, as she requested reasonable accommodations and sent medical documentation to Defendants multiple times during the relevant period.

91. Ms. Schmidt requested reasonable accommodations from Defendants.

92. Defendants directly and/or through their agents and employees have discriminated against Ms. Schmidt by:

   (a) failing to perform an individualized assessment on Ms. Schmidt for all of the essential functions of her position;

   (b) failing to provide Ms. Schmidt with necessary and reasonable accommodations on tasks that make up the essential functions of her position she is otherwise qualified to perform but has been categorically prohibited from performing, even though Plaintiff's requests would not pose an undue hardship on Defendants; and

   (c) failing to engage in a meaningful dialog about why reasonable accommodations were being denied, and further failing to articulate any undue hardship.

93. Defendants' conduct adversely affected Ms. Schmidt's opportunities and status because she was deprived of equal access to compensation and benefits.

94. Ms. Schmidt is entitled to immediate reinstatement of her position with full back pay and benefits, to otherwise be made whole for any losses sustained, and to have her reasonable accommodation requests granted.

95. Ms. Schmidt is entitled to compensatory and punitive damages for Defendants' malicious and/or reckless disregard for their discriminatory employment practices.

96. Further, Defendants are liable for the court costs, reasonable attorney fees, and expenses Plaintiff has incurred in the prosecution this matter.

## **COUNT III – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT: RETALIATION**

97. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

98. The ADA provides in relevant part:  "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, or participated in an investigation proceeding, or hearing under this chapter." 42 U.S.C. §12203(a).

99. Ms. Schmidt engaged in protected activity under the ADA by attempting to engage in an interactive process with Defendants by making and advocating for her numerous requests for accommodation.

100. Defendants were aware of the protected activity engaged in by Ms. Schmidt.

101. Defendants took adverse actions against Ms. Schmidt by constructively discharging her from her position.

102. There is a causal connection between the protected activity engaged in by Ms. Schmidt and the adverse action taken against her, because Ms. Schmidt's constructive discharge was a result of Ms. Kirshman's intolerance toward teachers with ADA accommodations and Defendants' failure to properly consider or process her ADA accommodation requests.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants have violated the Americans with Disabilities Act, 42 U.S.C. §12112, by unjustifiably limiting Plaintiff based on her disability in a way that adversely affected her job status and overall opportunities for employment.

B. Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. §12112, by denying her requests for reasonable accommodation.

C. Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. §12112, by retaliating against her for engaging in protected activity under the ADA.

D. Immediately reinstate Plaintiff to her prior position with full back pay and benefits, and otherwise make her whole for any losses sustained.

E. Award Plaintiff compensatory and punitive damages permitted under the ADA.

F. Award Plaintiff reasonable attorney fees and costs incurred in prosecuting this action pursuant to 42 U.S.C. §1211 and 42 U.S.C. §2000e-5(k).

G. Grant Plaintiff such other and further relief as the Court may deem just and equitable under the circumstances.

Respectfully submitted,

Dated: February 26, 2024      /s/ *Erin Hopper Donahue*
Erin Hopper Donahue (P74336)
Lauren A. Nicholson (P87027)
White Schneider, PC
Attorneys for Plaintiff

                                        1223 Turner Street, Suite 200
                                        Lansing, MI  48906
                                        Telephone: (517) 349-7744
                                        edonahue@whiteschneider.com
                                        lnicholson@whiteschneider.com

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury as to all issues triable as a matter of right.

                                        Respectfully submitted,

Dated:  February 26, 2024                /s/ *Erin Hopper Donahue*
                                                Erin Hopper Donahue (P74336)
                                                Lauren A. Nicholson (P87027)
                                                White Schneider PC
                                                Attorneys for Plaintiff
                                                1223 Turner Street, Suite 200
                                                Lansing, MI  48906
                                                Telephone: (517) 349-7744
                                                edonahue@whiteschneider.com
                                                lnicholson@whiteschneider.com